(Supreme Court, Appellate Division, Fourth Department.   December 1, 1915.)

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MERRELL, JJ.

---

(92 Misc. Rep. 413)

### McCADDON v. CENTRAL TRUST CO. OF NEW YORK et al.

(Supreme Court, Special Term, New York County.   November 23, 1915.)

1. SPECIFIC PERFORMANCE ☞114—COMPLAINT—CONSTRUCTION AND SUFFICIENCY.

The complaint alleged that a packing company executed to a trust company a mortgage to secure bonds, of which $3,000,000 were to be immediately issued, and temporary bonds were to be issued pending the printing of the permanent bonds. Plaintiff was the holder of one of such temporary bonds, which was typewritten, instead of being lithographed, as the other temporary bonds were. Plaintiff surrendered his temporary bond to the trust company, which refused to exchange a permanent bond therefor. The packing company delivered to the trust company for exchange permanent bonds to the amount of the temporary bonds, excluding plaintiff's bond. The complaint alleged a scheme to defraud plaintiff, of which the trust company had notice, and prayed that the two companies be required to deliver permanent bonds in exchange for plaintiff's bond, and be restrained from further delivering permanent bonds to persons other than plaintiff. *Held* that, it having been determined that plaintiff was not entitled to an injunction, the complaint simply stated a case for specific performance, and the allegations of fraud were wholly immaterial.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 356-370, 372; Dec. Dig. ☞114.]

2. SPECIFIC PERFORMANCE ☞12—DEFENSES—ENFORCEMENT NOT BENEFICIAL.

Plaintiff was entitled to specific performance, though the temporary bond evidenced his rights under the mortgage as fully as would the permanent bond, as the typewritten form of the temporary bond and the fact that it purported to be only temporary would embarrass plaintiff in at-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tempting to sell the bond, especially as the packing company and the trust company had repudiated plaintiff's right to a permanent bond.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 26–28, 37; Dec. Dig. &#8212;12.]

3. SPECIFIC PERFORMANCE &#8212;106—NECESSARY PARTIES.

The trust company was a necessary party to the action, as it assumed to act as trustee both for the packing company and for the bondholders, and had declined to perform its duty on request to certify the bonds as required by the mortgage.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 341, 342 Dec. Dig. &#8212;106.]

Action by Joseph T. McCaddon against the Central Trust Company of New York and another. On motion by the Trust Company for judgment. Motion denied.

See, also, 167 App. Div. 907, 151 N. Y. Supp. 1127; 154 N. Y. Supp. 1131.

William P. Maloney, of New York City, for plaintiff.

Joline, Larkin & Rathbone, of New York City, for defendant Central Trust Co. of New York.

HOTCHKISS, J. By this motion for judgment the trust company attacks the sufficiency of the complaint. Reduced to informal language, the substance of the allegations of the complaint are as follows:

The packing company, a Maine corporation, all of whose property is located in Mexico and consists solely of that covered by the mortgage, executed to the trust company, as trustee, a mortgage to secure bonds of the packing company in the total sum of $5,000,000, of which $3,000,000 were authorized to be immediately certified by the trust company and issued. Pending the printing of permanent bonds, temporary bonds were to be certified and issued, and accordingly temporary bonds were so certified and issued, apparently to the full amount of $3,000,000. Plaintiff is the holder of one of such bonds for the sum of $100,000, dated December 1, 1911, and payable to bearer. This bond is typewritten, whereas the other temporary bonds, although in similar form, are lithographed. In or about July, 1914, the packing company delivered to the trust company $2,900,000 only of the permanent bonds for certification and exchange for an equal amount of temporary bonds. Plaintiff surrendered his temporary bond to the trust company to be exchanged, and took its receipt therefor; but thereafter the trust company informed him that it had no permanent bonds to exchange for his temporary bond, and that under instructions from the packing company it intended to deliver all of the $2,900,000 permanent bonds in its possession to holders of temporary bonds other than plaintiff. It is also alleged that the trust company had theretofore commenced and was continuing to make deliveries accordingly. It is further alleged that the failure of the packing company to deliver to the trust company the full $3,000,000 of permanent bonds for certification and exchange was in pursuance of a scheme to defraud plaintiff, of which scheme the trust company had due notice. For relief plaintiff prays: (1) That "the defendants be required to issue, certify

and deliver permanent bonds in exchange for plaintiff's temporary bond"; (2) that pending the action the trust company be restrained from delivering further any permanent bonds to persons other than plaintiff; and (3) for general relief.

[1, 2] The plaintiff secured a temporary injunction restraining the delivery of bonds to persons other than the plaintiff; but the order was reversed and the injunction vacated by the Appellate Division, the court saying:

"To prevent others from receiving the bonds to which they are entitled cannot be said to be in furtherance of any claim plaintiff may have that bonds be issued to him."

This disposes of plaintiff's equity upon that phase of his complaint. As I view the case in its other aspects, it is simply one for specific performance. In this form of action plaintiff's relief depends wholly upon his contractual rights. The allegations of fraud on the part of the packing company and notice to the trust company are wholly immaterial. They only go to show motive, and the motives which actuated either the packing company or the trust company in refusing to recognize plaintiff's right to permanent bonds are of no consequence whatever. Plaintiff's temporary bond is evidence of his right to receive permanent bonds for an equal amount and in due form. The undue failure or refusal to deliver such bonds, and not the ethics of the default, is the gravamen of the wrong of which plaintiff complains. Nor is it any answer to say that plaintiff's rights under the mortgage are as fully evidenced and secured by his temporary bond as they would be were he to receive the permanent bond to which he is entitled. While, in law, this may in a measure be true, the obligations of the defendants (in their respective capacities) are to issue, certify, and deliver bonds in permanent engraved form. One would be blind to practical conditions in the security market were he to say that a temporary bond in typewritten characters afforded plaintiff as marketable evidence of his rights as would one wholly regular both in form and style.

The fact that all other bondholders are in possession of engraved permanent bonds, coupled with the informality of plaintiff's bond, is in itself discriminatory and calculated to beget suspicion, and the fact that on its face plaintiff's bond purports to be but temporary would tend to aggravate this discrimination as time passes. These circumstances, particularly in view of the further fact that both the packing company and the trust company have notified plaintiff that his right to any permanent bonds is repudiated places plaintiff under a moral, if not legal, as well as a practical, embarrassment in any attempt to sell his bond, notwithstanding its negotiable form. That plaintiff may have specific performance I have no doubt. Plaintiff's temporary bond (see copy attached to complaint) is headed "'Temporary Six Per Cent. First and Special Mortgage Gold Bond." Presumably, therefore, plaintiff's debt is or should be secured by a prior lien on the mortgaged property. To deny him evidence of his debt and lien, such as the debtor has contracted to give to plaintiff in common with all other holders of similar bonds, is not only prejudicial

to plaintiff's present rights, but may jeopardize both his debt and his lien, or embarrass his attempts to participate in the benefits of the mortgage and the property covered thereby. The actual situation is analogous to one where a debtor has borrowed money on his promise to give a mortgage on specific property as security for the loan, and then has refused to execute the mortgage, in which case he will be decreed to perform. De Pierres v. Thorn, 17 N. Y. Super. Ct. 266, 287; Dean v. Anderson, 34 N. J. Eq. 496; Hermann v. Hodges, L. 'R. 16 Eq. 18.

[3] I do not think the trust company is a mere agent of the packing company, and hence as such is not a proper party to this action, as is asserted by its counsel. It has assumed to act as trustee for both the packing company and the bondholders. When properly requested by the packing company, it is the duty of the trust company to certify bonds as provided in the mortgage. This duty it has declined to perform, and hence it is a necessary party.

The motion is denied, with $10 costs.